UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| **SHERRY K. McCOLLOM,** | ) | |
| | ) | |
|     **Plaintiff,** | ) | |
| | ) | |
|     v. | ) | Case number 1:04cv0105 TCM |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
|     **Defendant.** | ) | |

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. § 405 (g) for judicial review of the final decision of Jo Anne B. Barnhart, the Commissioner of Social Security ("Commissioner"), denying Sherry K. McCollom's application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433. Ms. McCollom ("Plaintiff") has filed a brief in support of her complaint; the Commissioner has filed a brief in support of her answer.[1]

## Procedural History

Plaintiff applied in January 2002 for DIB, alleging a disability since January 1, 1991, caused by a heart attack, bad heart, fatigue, and shortness of breath. (R. at 49-51.)[2] Her

---

[1] The case is before the undersigned for a final disposition pursuant to the written consent of the parties. See 28 U.S.C. § 636(c).

[2] References to "R." are to the administrative record filed by the Commissioner with her answer.

application³ was denied initially and after a hearing held in October 2003 before Administrative Law Judge ("ALJ") James K. Steitz. (Id. at 19-20, 35-38.) The ALJ determined that Plaintiff was not under a disability between January 1, 1991, the alleged onset date, and June 30, 1991, the date she was last insured, and denied her application. (Id. at 9-14.) The Appeals Council denied Plaintiff's request for review of that decision, effectively adopting the ALJ's decision as the final decision of the Commissioner. (Id. at 2-4.)

## Testimony Before the ALJ

Plaintiff, represented by counsel, was the only witness to testify. Her husband was present but did not testify. Before any testimony was taken, the ALJ explained that there was no question that she was not disabled as of 2002, see note 3, *supra*, but the issue was whether she was disabled in 1991. (Id. at 511-12.)

Plaintiff testified she was born on March 28, 1962, and was then 41 years old. (Id. at 513.) She was 5 feet 4 inches tall. (Id. at 521.) In 1990, her normal weight was 130 pounds. (Id. at 520.) Between 1991 and 1996, she lost 30 pounds. (Id.) Plaintiff lived with her husband of 17 years and her 15-year old daughter. (Id. at 513, 518.)

When Plaintiff worked, it was primarily in restaurants, either as a cook or waitress. (Id. at 513.) She was unable to work because of a heart condition that first bothered her in September 2001. (Id. at 513-14.) Asked when she was first disabled, Plaintiff further

---

³Alleging a disability onset date of November 2002, Plaintiff also filed for supplemental security income benefits ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383b. This application was initially granted, but was then denied based on her husband's income.

explained that she was sick a lot in the 1990's but did not know why.  (Id. at 514.)  Her doctor would tell her she had the flu or pneumonia.  (Id.)

In 1991, Plaintiff's legs and arms bothered her.  (Id.)  The pain became so bad that she had to quit her last job, at Bill's Cafe.  (Id.)  On several occasions she had to go to the emergency room because her feet, legs, and hands would become swollen and she had constant chest pain.  (Id. at 514-15.)  When she was working, she was lucky if she could work five to six hours.  (Id. at 516.)  Her last job lasted only two months.  (Id.)  She was losing weight, was constantly nauseated, would wake up sweating, and had chest and back pain.  (Id.)  She could not do even the simplest chore.  (Id. at 518.)  She sought medical help, but no one could find out what was wrong with her.  (Id. at 516.)  In 1991 and 1992, she passed out in her house.  (Id. at 523.)  Her doctors tried to tell her it was low blood sugar.  (Id.)

Finally, she started seeing a Dr. Newell in 1996 at the Bloomfield Medical Clinic.  (Id. at 517.)  He would tell her she had a cold or bronchial infection and that was why her chest hurt.  (Id. at 519.)  No one discovered the true cause for her illness until she had a heart attack in November 2001.  (Id. at 525.)  Plaintiff was currently being treated by a cardiologist, Dr. LaFoe, and a neurologist, Dr. Stahley.[4]  (Id. at 524.)

Plaintiff further testified that she tried to hold down a job between 1991 and 1996.  (Id.)  She worked at different restaurants or cafes, but was never able to work a 40-hour

---

[4]These names were spelled "Defoe" and "Staley" in the record.  The Court will employ the correct spelling.

week.  (Id. at 520.)  At another point in the hearing, Plaintiff testified that she last worked a 40-hour job in 1986.  (Id. at 526.)  She got married in 1986 and had her daughter in 1988. (Id. at 527.)

Plaintiff's symptoms have not changed between 1991 and the present.  (Id. at 521-22.) Asked if there was a date in 1991 that she could remember her condition suddenly worsening, Plaintiff replied that it was in February.  (Id. at 525.)  At that point, she could not stand for longer than 35 minutes without having to take a break and rest for at least 10 minutes.  (Id. at 525-26.)  If she could be, she would still be working in restaurants.  (Id. at 528.)

## Medical and Other Records Before the ALJ

The documentary record before the ALJ included forms completed by Plaintiff as part of the application process; documents generated pursuant to that record; and medical records.

As part of the application process, Plaintiff completed, in relevant part, a disability report and two claimant questionnaires.  The latter include only information about her then-current activities and abilities.  (Id. at 69-77.)  On the former, Plaintiff lists a date of January 1, 1991, when her condition first bothered her and September 1, 1997, when it prevented her from working and when she stopped working.  (Id. at 101.)  Plaintiff also completed a list of nine medications, each prescribed by Dr. LaFoe.  (Id. at 59.)

Plaintiff's medical records begin in April 1997 when she complained of a knot on her neck.  (Id. at 148.)  She also related that she had increased shortness of breath a cough since the previous November.  (Id.)  In June 1998, her glucose level was checked.  (Id. at 123.)

It was within normal limits. (Id.) In June 1999, she sought medical treatment for an injured right arm. (Id. at 139-40.) In December, she complained of numbness on her left side when she awoke. (Id. at 137-38.) The following year, in May and August, she complained of gynecological problems. (Id. at 132-33.) In October, she sought treatment for thumb pain. (Id. at 129.) In October 2001, she complained during a gynecological checkup of fatigue and bronchitis. (Id. at 127.)

Plaintiff had a myocardial infarction on November 25, 2001. (Id. at 158.) The remainder of her medical records relate to that event and to subsequent treatment.

At admission on November 25, Plaintiff denied any prior cardiac problems. (Id. at 166.) On December 12, 2001, Plaintiff was reported to be cleaning houses for a living. (Id. at 396.) On January 9, 2002, it was noted that Plaintiff was working full-time as a housekeeper for other people. (Id. at 367, 385.) On February 3, Plaintiff was described as being in very good health until she had had the myocardial infarction. (Id. at 336.) She was reportedly not employed and had been a housewife. (Id.) On February 24, she reported that, with the exception of a miscarriage and an ovarian cyst, she had been relatively healthy until three months before. (Id. at 290.)

On October 29, 2002, and again on August 21, 2003, Dr. LaFoe opined that Plaintiff was completely and totally disabled. (Id. at 415, 468.)

### The ALJ's Decision

After again framing the issue as whether Plaintiff was disabled prior to the date her insured status ended, the ALJ found, in relevant part, as follows:

> The medical evidence does not support the claimant's allegations as to the intensity or persistence of her pain or its effect on her ability to work before June 30, 1991. A review of the evidence finds that there no [sic] evidence that the claimant received any medical treatment prior to her date last insured. All of the medical treatment began long after her date last insured, June 30, 1991. Of note, her major complaint of the heart attack and coronary artery disease were diagnosed in 2001, more than ten years after her date last insured.
>
> The claimant takes prescription medication currently. There is no evidence that she was taking prescription medicine on or about her date last inured.
>
> The documentary record reveals that no limitations or restrictions were placed on the claimant by a physician prior to her alleged onset date or her date last insured.

(Id. at 11.)

The ALJ further found that her work record detracted from Plaintiff's credibility. (Id. at 12.)

Noting that Plaintiff had no past relevant work to evaluate, the ALJ applied the Medical-Vocational Guidelines (the "Grid") and concluded that with her age, education, work experience, and residual functional capacity as of June 30, 1991, Plaintiff was not disabled within the meaning of the Act.

**Legal Standards**

Under the Social Security Act, the Commissioner shall find a person disabled if the claimant is "unable to engage in any substantial activity by reason of any medically determinable physical or mental impairment," which must last for a continuous period of at least twelve months or be expected to result in death. 42 U.S.C. § 1382c(a)(3)(A). The impairment suffered must be "of such severity that [the claimant] is not only unable to do [her] previous work, but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step process for determining whether a person is disabled. See 20 C.F.R. §§ 416.920, 404.1520. See also **Ramirez v. Barnhart**, 292 F.3d 576, 580 (8th Cir. 2002); **Pearsall v. Massanari**, 274 F.3d 1211, 1217 (8th Cir. 2002); **Cox v. Apfel**, 160 F.3d 1203, 1206 (8th Cir. 1998). First, the claimant cannot be presently engaged in "substantial gainful activity." See 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. See 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities . . ." Id. (alteration added). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or

combination of impairments would have no more than a minimal impact on her ability to work." **Caviness v. Massanari**, 250 F.3d 603, 605 (8th Cir. 2001).

At the third step in the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment which meets or equals one of the impairments listed in the regulations and whether such impairment meets the twelve-month durational requirement. See 20 C.F.R. §§ 416.920(d), 404.1520(d), and Part 404, Subpart P, Appendix 1. If the claimant meets this requirement, she is presumed to be disabled and is entitled to benefits. **Warren v. Shalala**, 29 F.3d 1287, 1290 (8th Cir. 1994).

At the fourth step, the ALJ will "review [claimant's] residual functional capacity ["RFC"] and the physical and mental demands of the work [claimant has] done in the past." 20 C.F.R. §§ 404.1520(e) and 416.920(e). "[RFC] is what the claimant is able to do despite limitations caused by all the claimant's impairments[,]" **Lowe v. Apfel**, 226 F.3d 969, 972 (8th Cir. 2000) (citing 20 C.F.R. § 404.1545(a)) (alteration added), and requires "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities,'" **Depover v. Barnhart**, 349 F.3d 563, 565 (8th Cir. 2003) (quoting S.S.R. 96-8p)). "[RFC] 'is not the ability merely to lift weights occasionally in a doctor's office; it is the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.'" **Ingram v. Chater**, 107 F.3d 598, 604 (8th Cir. 1997) (quoting McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir. 1982) (en banc)) (alteration added).

In determining a claimant's RFC, the ALJ must evaluate the claimant's credibility regarding subjective pain complaints. **Ramirez**, 292 F.3d at 580-81; **Pearsall**, 274 F.3d at 1217. This evaluation requires that the ALJ consider "(1) a claimant's daily activities, (2) the duration, frequency, and intensity of pain, (3) precipitating and aggravating factors, (4) dosage, effectiveness, and side effects of medication, and (5) residual functions." **Ramirez**, 292 F.3d at 581 (citing Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted)). Although an ALJ may not disregard subjective complaints of pain based only on a lack of objective medical evidence fully supporting such complaints, "an ALJ is entitled to make a factual determination that a Claimant's subjective pain complaints are not credible in light of objective medical evidence to the contrary." **Id.** See also **McKinney v. Apfel**, 228 F.3d 860, 864 (8th Cir. 2000) ("An ALJ may undertake a credibility analysis when the medical evidence regarding a claimant's disability is inconsistent."). And, although a claimant need not be reduced to life in front of the television in order to prove that pain precludes all productive activity, see **Baumgarten v. Chater**, 75 F.3d 366, 369 (8th Cir. 1996), "[t]he mere fact that working may cause pain or discomfort does not mandate a finding of disability," **Jones v. Chater**, 86 F.3d 823, 826 (8th Cir. 1996) (alteration added).

After considering the Polaski factors, the ALJ must make express credibility determinations and set forth the inconsistencies in the record which caused the ALJ to reject the claimant's complaints. See **Singh v. Apfel**, 222 F.3d 448, 452 (8th Cir. 2000); **Beckley v. Apfel**, 152 F.3d 1056, 1059 (8th Cir. 1998). The decision of an ALJ who seriously

considers, "but for good cause expressly discredits, a claimant's subjective complaints of pain, is not to be disturbed." **Haggard v. Apfel**, 175 F.3d 591, 594 (8th Cir. 1999).

The burden at step four remains with the claimant. See **Banks v. Massanari**, 258 F.3d 820, 824 (8th Cir. 2001); **Singh**, 222 F.3d at 451. "It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC." **Pearsall**, 274 F.3d at 1217.

If the ALJ holds at step four of the process that a claimant cannot return to past relevant work the burden shifts at step five to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. **Banks**, 258 F.3d at 824. See also 20 C.F.R. §§ 416.920(f), 404.1520(f). The Commissioner may meet her burden by referring to the medical-vocational guidelines or by eliciting testimony by a vocational expert. **Pearsall**, 274 F.3d at 1219. The Grids may not be relied on if the claimant suffers from non-exertional impairments unless those impairments "do not diminish or significantly limit the claimant's [RFC] to perform the full range of Guideline-listed activities[.]" **Ellis v. Barnhart**, 392 F.3d 988, 996 (8th Cir. 2005) (alterations added; interim quotations omitted).

The ALJ's decision whether a person is disabled under the standards set forth above is conclusive upon this Court if it is supported by "substantial evidence on the record as a whole." **Dunahoo v. Apfel**, 241 F.3d 1033, 1037 (8th Cir. 2001); **Clark v. Apfel**, 141 F.3d 1253, 1255 (8th Cir. 1998). "Substantial evidence is less than a preponderance, but enough

that a reasonable mind might accept it as adequate to support a decision." **Cox**, 160 F.3d at 1206-07.  When reviewing the record to determine whether the Commissioner's decision is supported by substantial evidence, however, the court must also take into account whatever in the record fairly detracts from that decision.  **Warburton v. Apfel**, 188 F.3d 1047, 1050 (8th Cir. 1999); **Baker v. Apfel**, 159 F.3d 1140, 1144 (8th Cir. 1998).  The court may not reverse that decision merely because substantial evidence would also support an opposite conclusion.  **Dunahoo**, 241 F.3d at 1037; **Tate v. Apfel**, 167 F.3d 1191, 1196 (8th Cir. 1999); **Pyland v. Apfel**, 149 F.3d 873, 876 (8th Cir. 1998).  Thus, if "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, the [Court] must affirm the agency's decision."  **Wheeler v. Apfel**, 244 F.3d 891, 894-95 (8th Cir. 2000) (alteration added).

## Discussion

Plaintiff argues that the ALJ erred in concluding that her testimony had not established she was disabled as of June 30, 1991.  The Commissioner disagrees.

As noted by the Commissioner, the issue before the Court is whether Plaintiff has carried her burden of showing she had a severe impairment on or before June 30, 1991.  See **Banks**, 258 F.3d at 824.  When determining whether Plaintiff has made this showing, only her medical condition as of that date is to be considered.  See **Long v. Chater**, 108 F.3d 185, 187 (8th Cir. 1997).

There is no medical evidence in the record about Plaintiff's medical condition in 1991. Although she testified that she sought medical treatment then, her medical records begin with those of the Bloomfield Medical Clinic in 1997 for treatment for a condition unrelated to the impairments which allegedly prevented her from working in 1991. Moreover, the medical records that were before the ALJ reflect that she was considered to be "relatively healthy" or in "very good health" until her heart attack in November 2001. There is no reference in those records to any condition that precluded her from working. Indeed, the only references to her working are to her either being a housewife or cleaning houses for other people.

A finding that Plaintiff was disabled as of June 30, 1991, would have to be based solely on her testimony. The ALJ's finding that her testimony was not entirely credible is supported by the record. The lack of any supporting objective evidence to support her testimony about her condition in 1991 – six years before the earliest medical record and ten years before her heart attack – is a proper consideration when evaluating her credibility, see **Stephens v. Shalala**, 50 F.3d 538, 541 (8th Cir. 1995); **Barrett v. Shalala**, 38 F.3d 1019, 1022 (8th Cir. 1994), as is the lack of any restrictions placed on her at the time by any physician, see **Hutton v. Apfel**, 175 F.3d 651, 655 (8th Cir. 1999); **Jones v. Callahan**, 122 F.3d 1148, 1152 (8th Cir. 1997), and her poor work history, **Hutton**, 175 F.3d at 655; **Siemers v. Shalala**, 47 F.3d 299, 301 (8th Cir. 1995). Additionally, although Plaintiff alleges she was disabled as of June 30, 1991, she earned her fourth and sixth highest annual earnings after that year. See **Dodson v. Chater**, 101 F.3d 533, 534 (8th Cir. 1996) (ALJ's

findings that claimant's subjective complaints of pain were not fully credible were supported by, among other things, claimant continuing to work after onset of impairments).

## **Conclusion**

Considering all the evidence in the record, including that which detracts from the ALJ's conclusions, the Court finds that there is substantial evidence to support the ALJ's decision that Plaintiff was not disabled as of June 30, 1991. Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is AFFIRMED and this case is DISMISSED.

An appropriate Judgment shall accompany this Memorandum and Order.

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 27th day of September, 2005.